FILED IN CHAMBERS
U.S.D.C. Rome

JUN 0 8 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

FRED JONATHAN WHITT and TONIA HIXSON,

    Plaintiffs,

v.

MERYL BURNETTE, et al.,

    Defendants.

CIVIL ACTION

NO. 4:05-CV-237-RLV

O R D E R

In this diversity action, the plaintiffs are asserting a claim for false arrest under O.C.G.A. § 51-7-1, arising out of their arrest on November 11, 2003, by an officer of the Bartow County Sheriff's Department for being in possession of a stolen vehicle. Pending before the court are the defendants' motions for summary judgment [Doc. Nos. 66 and 67].

I. FACTUAL BACKGROUND

On or about October 24, 2003, Tonia Hixson telephoned the Cartersville, Georgia, office of Group Holdings Riddle, Inc., d/b/a Budget Rent A Car ["GHR"] to see about renting a vehicle. She spoke with Joe McDonald, who referred her to Meryl Burnette, the store manager. At that time, Burnette refused to rent a vehicle to Hixson. Hixson then called customer service at Budget Rent A Car, Inc., and complained about being refused service at GHR. After talking with customer service, Burnette agreed to rent a vehicle to

Hixson if she would come to the store with someone willing to submit a valid major credit card to serve as security for the rental. Burnette explained that even though the rental agreement would be with another person, Hixson would be added to the rental agreement as an additional driver and would thereby have use of the vehicle. Since Hixson was to be the primary driver, Burnette also required that Hixson provide proof of insurance. To satisfy this requirement, a State Farm agent in Cleveland, Tennessee, faxed to Burnette a binder issued to Hisxon dated October 23, 2003.

On October 24, Hixson came to GHR's office with Jesse Anthony Galaz to rent a vehicle, using Galaz's credit card as security. Since Galaz's credit card was being used, Galaz signed the rental agreement, listing Hixson as an additional driver. The 2001 Toyota Corolla was rented for a week and was due to be returned on October 31. Hixson told Burnette that, although the contract was for one week, she would probably be returning to extend the contract; Hixson further told Burnette that she would probably be using the vehicle for three to four weeks.

On October 31, Hixson returned to GHR's office, paid $155 for the week rental, and then extended the contract for an additional week. As noted on the contract, the vehicle was due to be returned on November 7; however, it was not returned on that date. In her deposition, Hixson testified as follows with respect to her failure to return the vehicle on November 7:

2

Q . . . . And on 11-7 did you make the call, was it on another day?

A I know I attempted on that day and actually two days in a row. I don't recall what the dates were. I know on Friday and Saturday both I did try to call. They were bad to put you on hold.

Q How many times did you try on Friday?

A At least once.

Q How many times did you try on Saturday?

A At least a couple of times.

Q Is there any reason why you didn't just drive by the place?

A Just didn't.

Q Were you in town?

A Yes, sir.

Q Now, on Friday when you called how much money did you and Jesse have between the two of you?

A Me and Jesse?

Q I mean Jon.

A I don't recall, but we had enough.

Q Enough to do what?

A To pay them.

Q And on Saturday did you have the same amount?

A I'm sure.

Q What day of the week were you arrested?

A Tuesday.

3

> Q   Is there any reason why you didn't call them on Sunday or Monday?
>
> A   Sunday they would have been closed. Monday was just a hectic day.
>
> Q   And then any reason why you didn't call them on Tuesday, the day that you were arrested?
>
> A   It was still an upside down day.

Deposition of Tonia Lynn Whitt at 76-77.

When the vehicle was not returned on November 7, Burnette attempted to contact Hixson, using the information provided by Hixson at the time that the vehicle had originally been rented. When she was unable to contact her by telephone, Burnette and McDonald then drove to the Guest House in Cartersville, where Hixson was supposedly residing. However, they did not find the vehicle at that location. Burnette alleges that she called Galaz and told him that the vehicle had not been returned. Although Galaz denies that that conversation took place, he does concede that he talked to McDonald on two occasions on the afternoon of November 11.

On November 11, Galaz was told that the vehicle had not been returned, and he was asked if he knew where the vehicle was or if he had another way to contact Hixson. Galaz stated that he did not know where the vehicle was but that he would try to contact Hixson. His attempts to contact Hixson were unsuccessful.

4

Later that afternoon, Burnette contacted the Bartow County Sheriff's Office. Deputy Brandon Pruett was sent to the rental office, where he interviewed Burnette. Burnette explained the circumstances of the rental, showed Pruett a copy of the rental agreement, and recounted her efforts to contact Hixson. After talking with Burnette, Pruett went to the Guest House and talked with the manager, who informed Pruett that Hixson had been locked out for non-payment of rent. At this point, Pruett conferred with his supervisor, prepared a report, and entered the vehicle in the GCIC database as having been stolen.

At approximately 10:50 p.m. on the same evening, Deputy Brian Earick, of the Bartow County Sheriff's Office, was conducting business checks when he noticed a vehicle traveling slowly through the parking lot where he was patrolling. Because the business was closed at the time and because of recent reports of burglaries, Earick ran the tag number through the GCIC and was advised that the vehicle had been listed as having been stolen.

Earick then followed the vehicle to a residence on Roving Hill Circle and, with the assistance of back-up conducted a felony stop. After Whitt and Hixson had been taken from the vehicle and after consulting with his superior officer, Earick determined that there was probable cause to arrest them for being in possession of a stolen vehicle. On the next day, Earick completed an "Affidavit for Arrest" with respect to Whitt and Hixson, appeared before a

magistrate, and applied for an arrest warrant, which was issued by the magistrate.

The plaintiffs were unable to make bond until February 7, 2004, at which time they were released from custody. The charges remained pending until May 17, 2006, when a new solicitor nolle prosed the charges.

## II. LEGAL DISCUSSION

O.C.G.A. § 51-7-1 provides, "An arrest under process of law, without probable cause, when made maliciously, shall give a right of action to the party arrested." In addition to these elements, Georgia also requires that the prosecution have terminated in favor of the person arrested. Desmond v. Troncalli Mitsubishi, 243 Ga. App. 71 (2000).

With respect to false arrest claims, the law makes a distinction between those cases where a party directly or indirectly urges a law enforcement official to commence criminal proceedings and those where a party merely relays facts to an official who then makes the independent judgment to arrest the individual. Jacobs v. Shaw, 219 Ga. App. 425 (1995); McLeod v. Pruco Life Insurance Co., 215 Ga. App. 177 (1994).

In the instant case, Burnette informed Pruett that the vehicle rented by Hixson was supposed to have been returned on November 7 and was four days late. Pruett was advised that the rental agency

had not been contacted about the vehicle and had been unable to contact Hixson despite having made numerous attempts. Burnette also advised Pruett that Hixson had used a friend's credit card to rent the vehicle. Pruett examined the rental agreement, which provided that the vehicle was to be returned on November 7.[1] Pruett visited the location where the plaintiffs were supposed to be living and learned that they had been locked out for nonpayment of rent.

Because the plaintiffs had been locked out of their residence and because the vehicle had not been returned, Pruett decided to list the vehicle in the GCIC database as having been stolen. According to Pruett, this decision was made based on his own investigation and did not rely solely on the statements made to him by Burnette. Moreover, although Burnette may have encouraged Pruett to determine that the vehicle had been stolen, the evidence is clear that Burnette's exhortations were not the deciding factor.

---

[1] The plaintiffs argue that the rental agreement provided that the signer's credit card could be charged if the vehicle was not returned on time but that Pruett did not read this language. The court finds this fact to be irrelevant. The agreement did not mandate that the credit card be charged. The defendants' decision not to charge the credit card but to seek return of the vehicle is especially justified in view of the fact that the credit card to be charged was not the credit card of the person in possession of the vehicle. It was not unreasonable for the rental agency to decide not to immediately charge the credit card, which had been presented as an accommodation by Galaz to help his friend obtain the vehicle. Instead of forcing the accommodation signer to incur possibly significant charges, the rental agency reasonably decided to seek return of the vehicle.

The court also notes that Pruett did not enter the plaintiffs' names in the GCIC database but simply listed the vehicle itself.

The actual arrest of the plaintiffs, by Earick, was also based upon his independent judgment. Earick felt that the vehicle was engaged in suspicious activity and learned after accessing the GCIC database that the vehicle had been reported as having been stolen. After discussing the matter with his supervisor, Earick made the independent decision to arrest the plaintiffs. Significantly, Earick had no communications with the defendants whatsoever.

After carefully reviewing all the uncontested facts in this case, the court concludes that Burnette certainly had probable cause to believe that the vehicle had been stolen: it had not been returned on time (even though it had been returned for another week of rental just a week previously); the vehicle could not be located; and numerous attempts to contact the plaintiffs failed. The police officers involved also had probable cause to believe that the vehicle had been stolen based upon the statements made by Burnette and their own independent attempts to locate the vehicle and the plaintiffs.

For the foregoing reasons the court concludes that GHR and Burnette are entitled to summary judgment. Since liability, if any, on the part of Budget Rent A Car System, Inc, is dependent upon the liability of GHR, Budget Rent A Car System is also

entitled to summary judgment. The motions for summary judgment [Doc. Nos. 66 and 67] are GRANTED.

SO ORDERED, this 8th day of June, 2007.

/s/ Robert L. Vining, Jr.
ROBERT L. VINING, JR.
Senior United States District Judge